

United States District Court
Southern District of Texas
FILED

NOV 0 5 2013

David J. Bradley, Clerk of Court

# United States District Court
# Southern District of Texas
# Houston Division

In the Matter of:

John P. Trowbridge,                              Case No. 4:13-CV-01850

          Petitioner,

    V.                              Memorandum of Law and Facts

United States America, ex. rel.
Internal Revenue Service,

          Respondent.

1.   **Now comes,** the Petitioner, John P. Trowbridge, in his own proper person (Pro Per) in answer and response to the District Court ruling pursuant to the October 25th 2013 court hearing as granted to the Respondent by the court.  This petitioner was give the right to submit the following memorandum of law and facts. This District Court hearing was based upon the Respondent's court filed Motion, see as follows:

> "Respondent, the United States of America (on behalf of its agency the Internal Revenue Service), by and through the United States Attorney for the Southern District of Texas, pursuant to Rules 12(b)(1) of the Federal Rules of Civil Procedure, **moves to dismiss this civil action. For the reasons discussed below, this Court lacks subject matter jurisdiction as the summons at issue is excepted from the provisions of 26 U.S.C. § 7609.** In support of its motion, the United States would show the Court:
>
> 1. On June 25, 2013, John P. Trowbridge ("Trowbridge") filed a Petition to Quash IRS Summons ("Petition") seeking to quash an Internal Revenue Service ("IRS") summons issued by IRS Revenue Officer James Ashton on May 30, 2013.  A copy of the summons is attached to the Petition as Exhibit A.
>
> 2. The summons was issued to and served on Brittany Schoppe, Trowbridge's employee, to give testimony and produce records pertaining to payments to her by Trowbridge starting January 1, 2012 and ending on the date of compliance with the summons.
>
> 3. The summons was issued in aid of the collection of tax liabilities assessed against Trowbridge for the tax 1993 through 1997. **Attached as Exhibit A is a copy of the Declaration of Revenue Officer James Ashton.**" (emphasis added)

The above Respondent's court filed motion made a claim as follows:

> "3. The summons was issued in aid of the collection of tax liabilities assessed against Trowbridge for the tax 1993 through 1997. **Attached as Exhibit A is a copy of the Declaration of Revenue Officer James Ashton.**" (emphasis added)

2.    This Petitioner raised the issue of the missing Declaration of Revenue Officer James Ashton in Petitioner's Answer and Objection as file with the Court on October 18th, 2013, yet at the Court hearing no such answer was given as to the missing declaration, from the court record, see as follows:

> 2.    Further, the respondent states in their motion as follow:
> "3. The summons was issued in aid of the collection of tax liabilities assessed against Trowbridge for the tax 1993 through 1997. Attached as Exhibit A is a copy of the Declaration of Revenue Officer James Ashton."
> 3.    In objection, this petitioner's/plaintiff's states for the court record, that no such "Declaration of Revenue Officer James Ashton.", was served upon this plaintiff, see petitioner's/plaintiff's Exhibit G, "Respondent's, **CERTIFICATE OF SERVICE". Yes just yes where is the legal foundation of this case ???**

3.    Further, Revenue Officer James Ashton never appeared at the October 25th 2013 hearing to establish the legal foundation for the collection summons, therefore due to the hearsay from Respondent's counsel, the court lacked subject matter jurisdiction to make any such requested ruling from the court, see case law as follows:

> Trinsey v. Pagliaro, 229 F.Supp. 647 (1964) **"The defendants' motion to dismiss for failure to state a claim unsupported by affidavits or depositions is incomplete because it requests this Court to consider facts outside the record which have not been presented in the form required by Rules 12(b)(6) and 56(c). Statements of counsel in their briefs or argument while enlightening to the Court are not sufficient for purposes of granting a motion to dismiss or summary judgment.** ORDER And now, this 28th day of May, 1964, the defendants' motion to dismiss is denied without prejudice." (emphasis added)

This Court hearing was based upon the Respondent's court filed Motion, wherein the Respondent further stated as follows:

> 8. It is well settled that the United States, as sovereign, may not be sued without its consent and that the terms of its consent define the court's jurisdiction. United States v. Shaw, 309 U.S. 495 (1940); Lehman v. Nakshian, 453 U.S. 156 (1981).

> 9. As Trowbridge lacks standing to bring this suit and the United States has not waived its sovereign immunity, the Court lacks of subject matter jurisdiction over this civil action. Viewtech, supra, 653 F.3d at 1104.

4.    The Petitioner's motion and complaint was not a suit for damages against the United

States, instead it was to gain the long lost due process back from the Internal Revenue Service, and the ability to correct their false agency records that had caused such irreparable harm to this Petitioner for many years. As to Respondent's claim of, "the Court lacks of subject matter jurisdiction over this civil action.", never once did the Respondent set forth and such law before the court.  Further, this petitioner did set forth just why the District Court had subject matter jurisdiction within the motion to quash complaint, wherein this Petitioner, listed 28 USC § 1331 and 5 USC 701 - 706.  And at the October 25th 2013 court hearing, this Petitioner as stated upon the court record 26 USC § 7433, see Court Transcript attached, and quoted court transcript from pages 9 and 10 in part as follows:

```
1 THE COURT: Well, but sovereign immunity is
2 basic to our jurisprudence, and I can't -- I can't
3 attenuate that simply because I think it's a meritorious
4 case.
5 MR. TROWBRIDGE: Your Honor, I should like to
6 offer 26 USC § 7433, which reads in part, "A, in general,
7 if in connection with any collection of federal tax with
8 respect to a taxpayer any officer or employee of the
9 Internal Revenue Service recklessly or intentionally, or by
10 reason of negligence disregards any provision of this title
11 or any regulation promulgated under this title, such
12 taxpayer may bring a civil action for damages against the
13 United States in the District Court of the United States."
14 And further, I may, Your Honor?
15 THE COURT: Yes, sir.
16 MR. TROWBRIDGE: Title 5 USC § 706, regarding
17 scope of review. Would you like for me to read that, sir?
18 THE COURT: Well, let me get Ms. Targac's
19 response first.
20 MR. TROWBRIDGE: I'm sorry. Yes, sir.
21 MS. TARGAC: But, Your Honor, he didn't bring a
22 7433 suit. He brought a petition to quash an Internal
23 Revenue Service summons. And as I stated previously, there
24 are very limited circumstances where an individual can
25 bring such a suit, and this case is specifically excluded
```

At page 10

```
1 by two different portions of the statute.
2 THE COURT: I do think that applies to a
3 different kind of procedural animal, doesn't it,
4 Mr. Trowbridge?
5 MR. TROWBRIDGE: Your Honor, I believe that in
6 the papers filed with you, we raised the federal question
```

7 28 USC, 1331.
8 THE COURT: That -- 1331, though, is separate
9 and apart from waiver of sovereign immunity.
10 MR. TROWBRIDGE: Yes, sir. May I go further on
11 § 706, Your Honor?
12 THE COURT: Yes, sir.
13 MR. TROWBRIDGE: "To the extent necessary to
14 decision, and when presented, the reviewing court shall
15 decide all relevant questions of law, interpret
16 constitutional and statutory provisions, and determine the
17 meaning or applicability of the terms of an agency action.
18 The reviewing court shall:
19 "1. Compel agency action unlawfully
20 withheld or unreasonably delayed;
21 "2. Hold unlawful and set aside agency
22 action findings and conclusions found to be:
23 "A. Arbitrary, capricious and abusive
24 discretion or otherwise not in accordance with law;
25 "B. Contrary to constitutional right,

5.      This petitioner states for the District Court record that 28 USC § 1331 and 5 USC §

552(a) along with § § 701 - 706, and 26 USC § 7433 does grant the Judicial Power of the

District Court subject matter jurisdiction, see case law authority as follows:

<u>Presbyterian Church, v. United States of America</u>, (9th Cir. 1989) 870 F.2d 518, 523;
1989 U.S. App. LEXIS 4978; "The churches contend that the district court erred in
holding that their claims for declaratory and injunctive relief against the United
States, the Department of Justice, and the INS are barred by sovereign immunity.
**We reverse the district court on this issue, because we agree with the
churches that § 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. §
702 [\*524] (1982), waives sovereign immunity for the churches' claims for relief
other than money damages.**

At the outset, we note that the question is not whether § 702 creates jurisdiction for
the churches' claims. **The churches properly invoke federal jurisdiction under
28 U.S.C. § 1331 because their claims arise out of the Constitution. The
relevant [\*\*14] question is whether § 702 waives sovereign immunity for the
churches' non-monetary claims. We hold that it does.** [HN3] Section 702 reads:
A person suffering legal wrong because of any agency action, or adversely
affected or aggrieved by such action within the meaning of any relevant
statute, shall be entitled to judicial review thereof. An action in a court of the
United States seeking relief other than money damages and stating a claim
that an agency or officer or employee thereof acted or failed to act in an
official capacity or under color of legal authority shall not be dismissed nor
relief therein denied on the ground that it is against the United States or that
the United States is an indispensable party. 5 U.S.C. § 702.

**Section 702 acquired its current form in 1976, when Congress amended it to
add the second sentence. The clear objective of the 1976 amendment was to
waive sovereign immunity as a defense in actions seeking relief other than**

money damages. See, e.g., Schnapper v. Foley, 215 U.S. App. D.C. 59, 667 F.2d 102, 107-08 (D.C. Cir. 1981), cert. denied, 455 U.S. 948, 102 S. Ct. 1448, 71 L. Ed. 2d 661, 215 U.S.P.Q. (BNA) 96 (1982). **Congress was quite explicit about its goals of eliminating sovereign immunity as an obstacle in securing judicial review [**15] of the federal official conduct. Reasoning that "courts can make a useful contribution to the administration of Government by reviewing the legality of administrative conduct which adversely affects private persons,"** H. Rep. No. 1656, 94th Cong., 2d Sess. 5, reprinted in 1976 U.S. Code Cong. & Admin. News 6121, 6125, Congress noted that "great strides" toward making government accountable to citizens had already been made in the Federal Tort Claims Act and the Tucker Act, **and that the amendment to § 702 was designed to "strengthen this accountability by withdrawing the defense of sovereign immunity in actions seeking relief other than money damages, such as an injunction, declaratory judgment, or writ of mandamus."** Id. at 6124. **Congress observed that before the amendment to § 702, litigants seeking such nonmonetary relief were forced to resort to the "legal fiction" of naming individual officers, rather than the government, as defendants,** id. at 6125, 7 an approach that was "illogical" and "becloud[ed] the real issue whether a particular governmental activity should be subject to judicial review, and, if so, what form of relief is appropriate." Id. at 6128-29. The need to channel [**16] and restrict judicial control over administrative agencies, Congress concluded, could better be achieved through doctrines such as statutory preclusion, exhaustion, and justiciability, rather than through "the confusing doctrine of sovereign immunity." Id. at 6130. **Accordingly, § 702 was designed to "eliminate the defense of sovereign immunity as to any action in a Federal court seeking relief other than money damages and stating a claim based on the assertion of unlawful official action by an agency or by an officer or employee of the agency."** Id. at 6123.

fn7 Congress was doubtless referring to Ex parte Young, 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441 (1908), and its progeny.

The INS argues, and the district court agreed, that § 702 does not waive sovereign immunity for the INS conduct challenged in this case. **The INS' argument is that § 702's waiver of sovereign immunity applies only to "agency action" as defined by the APA, and that the challenged investigative activity does not constitute "agency action" within the APA definition.** The INS' argument is premised on the first sentence of § 702, enacted in 1946, which reads: "A person suffering legal wrong because of any agency action, or adversely affected [**17] or aggrieved by such [*525] action within the meaning of any relevant statute, shall be entitled to judicial review thereof." 5 U.S.C. § 702 (emphasis added). The INS contends, on the basis of this language, that § 702 waives sovereign immunity only for "agency action" -- that is, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13) (defining "agency action"). **The INS argues that, because its investigation of the churches does not fit this definition of "agency action," § 702's waiver of sovereign immunity does not apply to this suit.**

We cannot agree with the INS that § 702's waiver of sovereign immunity is limited to instances of "agency action" as technically defined in § 551(13).fn8 It may well be true that in its original 1946 form, when it contained only the sentence quoted above, § 702 limited judicial review to suits challenging "agency action" thus defined. **But the 1976 amendment to § 702 contains no such limitation. On its**

face, the 1976 amendment is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable.fn9 Nothing in the language [**18] of the amendment suggests that the waiver of sovereign immunity is limited to claims challenging conduct falling in the narrow definition of "agency action":

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States. . . .

Thus, on its face, the 1976 amendment to § 702 waives sovereign immunity in all actions seeking relief from official [**19] misconduct except for money damages. The INS' attempt to restrict the waiver of sovereign immunity to actions challenging "agency action" as technically defined in § 551(13) offends the plain meaning of the amendment.

fn8 Because we hold that § 702's waiver of sovereign immunity is not limited to suits challenging "agency action," we need not decide whether the alleged INS surveillance in this case constituted "agency action" within the meaning of § 551(13).

fn9 This court has previously held that the 1976 amendment to § 702 waives sovereign immunity not only for suits brought under § 702 itself, but for constitutional claims brought under the general federal-question jurisdiction statute, 28 U.S.C. § 1331. Beller v. Middendorf, 632 F.2d 788, 797 (9th Cir.), cert. denied, 452 U.S. 905, 101 S. Ct. 3030, 69 L. Ed. 2d 405 (1980).

Moreover, nothing in the legislative history of the 1976 amendment of § 702 suggests that Congress intended to limit the waiver of sovereign immunity to the specific forms of "agency action" enumerated in § 551(13). On the contrary, Congress stated that "the time [has] now come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity." H. Rep. No. 1656, 94th Cong., 2d Sess. 9, reprinted in 1976 U.S. Code Cong. & Admin. News 6121, 6129 (emphasis supplied). Congress singled out types of government conduct similar to the alleged INS conduct in this case -- "tax investigations" and "control of subversive activities" -- as appropriate for judicial review under the amended version of § 702. The INS fails to point to any evidence in the legislative history even suggesting that Congress meant anything other than what it plainly said in the 1976 amendment: that an action for nonmonetary [**20] relief challenging an agency for "acting or failing to act" shall not be barred by sovereign immunity. This waiver was clearly intended to cover the full spectrum of agency conduct, regardless of whether it fell within the technical definition of "agency action" contained in § 551(13).

It is particularly significant that Congress referred disapprovingly to the Ex parte Young fiction, which permitted a plaintiff to name a government official as the defendant in equitable actions to redress government misconduct, on the pretense that the suit was not actually against the government. By invoking the Young fiction plaintiffs could, even before Congress [*526] amended § 702 in 1976, maintain an

action for equitable relief against unconstitutional government conduct, whether or not such conduct constituted "agency action" in the APA sense. See, e.g., Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-91, 93 L. Ed. 1628, 69 S. Ct. 1457 (1949); U.S. v. Yakima Tribal Court, 806 F.2d 853, 859 (9th Cir. 1986); Clark v. Library of Congress, 242 U.S. App. D.C. 241, 750 F.2d 89, 102 (D.C. Cir. 1984). **Congress' plain intent in amending § 702 was to waive sovereign immunity for all such suits, thereby eliminating the need to invoke the Young fiction.**

**[\*\*21]  Our reading of § 702 as amended in 1976 also makes sense in terms of the structure and animating concerns of the APA. In urging us to limit the scope of § 702 to review of "administrative action" as opposed to "investigative activity,"** the INS argues that "the discrete acts that comprise an investigation, being ad hoc in nature, are entirely different from" -- and, by implication, less deserving of judicial scrutiny than -- "that genus of governmental activity referred to in [§ 551(13)], where the emphasis is on governmental action that results from a particular procedure mandated by statute or regulation." Brief of Appellees at 41, 44. **This argument is unpersuasive. It is true that the APA is largely concerned with regulatory commands and the processes by which agencies arrive at them.** The emphasis in § 551(13)'s definition of "agency action" on final regulatory decisions such as orders and rules is consonant with the APA's extensive specifications for regularizing the processes by which administrative orders or commands are created. **However, much of the APA is concerned with limiting the intrusiveness of administrative agencies' behavior in order to protect the privacy and autonomy [\*\*22]** of groups and individuals affected by the regulatory process. See, e.g., 5 U.S.C. § § 552, 552a, 552b (1982). Indeed, Congress has specifically created, and provided for judicial enforcement of, a general prohibition on the keeping of records on "how any individual exercises rights guaranteed by the First Amendment." 5 U.S.C. § 552a(e)(7). **It would be anomalous -- inexplicable in terms of the structure of the APA, and in evident conflict with the plain language and legislative history of the amendment to § 702 -- to read § 702 as preserving sovereign immunity in claims for equitable relief against government investigations alleged to violate First and Fourth Amendment rights.**

**Finally, the cases cited by the INS do not support its assertion of the sovereign immunity defense in this case. None is persuasive authority for the proposition that § 702's waiver of sovereign immunity is limited to government conduct that fits within the definition of "agency action" in 5 U.S.C. § 551(13).** Indeed, many of them have nothing to do with § 702's waiver of sovereign immunity, but rather are concerned with the definition of "final agency action" reviewable under § 704 of the APA, 5 U.S.C. § 704.  [\*\*23]  See, e.g., Geyen v. Marsh, 775 F.2d 1303, 1308 n.6 (5th Cir. 1985); American Trucking Ass'n v. United States, 755 F.2d 1292, 1296-97 (7th Cir. 1985); National Ornament & Electric Light Christmas Ass'n v. Consumer Prod. Safety Comm'n, 526 F.2d 1368 (2d Cir. 1975). **As for the § 702 cases cited by the INS that suggest § 702's authorization of judicial review is limited to instances of "agency action" as defined by § 551(13), it is noteworthy that these are all district court decisions which rely on pre-1976 authority.** See Fagot v. Federal Deposit Ins. Corp., 584 F. Supp. 1168, 1178 (D.P.R. 1984); Fund for Animals, Inc. v. Florida Game and Fresh Water Fish Comm'n, 550 F. Supp. 1206, 1208 (S.D. Fla. 1982); Helton v. United States, 532 F. Supp. 813, 822 (S.D. Ga. 1982); Pharmaceutical Mfrs Ass'n v. Kennedy, 471 F.

Supp. 1224, 1226-33 (D. Md. 1979).

**In sum, we reverse the district court's decision that sovereign immunity is a bar to the declaratory and injunctive relief sought by the churches against the United States, the Department of Justice, and the INS.** (emphasis added)

<u>Cobell v. Norton</u>, (DC Cir. 2001) 240 F.3d 1081, 1094; **"A. Subject Matter Jurisdiction** - Although appellants have not renewed their jurisdictional challenge to plaintiffs' claims, we must assure ourselves that we have jurisdiction. Plaintiffs' claims allege breach of trust obligations grounded in federal law and plaintiffs seek enforcement of their federal rights. **Plaintiffs' claims thus "arise under" the laws of the United States, granting federal court jurisdiction under 28 U.S.C. § 1331.** See, e.g., Robbins v. Reagan, 780 F.2d 37, 43 (D.C.Cir.1985); Association of National Advertisers, Inc. v. FTC, 617 F.2d 611, 619 (D.C.Cir.1979).

**B. Sovereign Immunity** - "The federal government claimed sovereign immunity below, but did not renew this claim on appeal. **As the court below noted, section 702 of the Administrative Procedure Act waives federal officials' sovereign immunity for actions "seeking relief other than money damages" involving a federal official's action or failure to act. 5 U.S.C. § 702. Insofar as the plaintiffs seek specific injunctive and declaratory relief - and, in particular, seek the accounting to which they are entitled - the government has waived its sovereign immunity under this provision.** See Bowen v. Massachusetts, 487 U.S. 879, 894-95, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). That plaintiffs rely upon common law trust principles in pursuit of their claim is immaterial, **as here they seek specific relief other 1095*1095 than money damages, and federal courts have jurisdiction to hear such claims under the APA.**

**C. Final Agency Action** - Whether there is a final agency action is also a jurisdictional question. With a few exceptions, if there is no final agency action, there is no basis for review of the government's decision or policy. **One exception occurs where plaintiffs claim that a governmental action was unlawfully withheld or unreasonably delayed.**

When the district court rejected the government's motion to dismiss in November 1998, it held that the HLIP itself constitutes final agency action. Cobell I, 30 F.Supp.2d at 33. This conclusion was based on a concession made by government counsel at oral argument on the motion. Id. At trial, however, appellants argued that there was no final agency action for the court to review. Cobell V, 91 F.Supp.2d at 35-36. Appellants' new position was that the HLIP was not a final agency action because it was (and continues to be) a "work in progress." Id. at 36. The court rejected this argument holding that the preexisting accounting system used to administer the IIM trust constituted a final agency action capable of review. Id.; see also Cobell I, 30 F.Supp.2d at 33-34. **It is the existing system, and not any proposed reform or replacement that "aggrieves plaintiffs today."** Cobell V, 91 F.Supp.2d at 36.

Although the government does not press the issue, this conclusion by the district court is questionable. While a single step or measure is reviewable, an on-going program or policy is not, in itself, a "final agency action" under the APA. See Lujan v. National Wildlife Federation, 497 U.S. 871, 890, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). **A plaintiff "cannot seek wholesale improvement of [a] program by court**

decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." Id. at 891, 110 S.Ct. 3177.

This is not to say that the district court lacked jurisdiction to hear plaintiffs' claims, however. Where a federal court has jurisdiction to hear challenges to an agency action it also has jurisdiction over claims of unreasonable delay. See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75 (D.C.Cir. 1984). As this court has noted in the past, where "an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers `final agency action' review." Sierra Club v. Thomas, 828 F.2d 783, 793 (D.C.Cir.1987); see also Public Citizen Health Research Group v. Commissioner, 740 F.2d 21, 32 (D.C.Cir.1984). Were it otherwise, agencies could effectively prevent judicial review of their policy determinations by simply refusing to take final action." (emphasis added)

<u>Doe v. Chao, Secretary of Labor</u>, (2004) 540 U.S. 614, 618; "[I]n order to protect the privacy of individuals identified in information systems maintained by Federal agencies, it is necessary . . . to regulate the collection, maintenance, use, and dissemination of information by such agencies." Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896. The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements.

Subsection (g)(1) recognizes a civil action for agency misconduct fitting within any of four categories (the fourth, in issue here, being a catchall), 5 U. S. C. § § 552a(g)(1)(A)-(D), and then makes separate provision for the redress of each. The first two categories cover deficient management of records: subsection (g)(1)(A) provides for the correction of any inaccurate or otherwise improper material in a record, and subsection (g)(1)(B) provides a right of access against any agency refusing to allow an individual to inspect a record kept on him. In each instance, further provisions specify 619*619 such things as the de novo nature of the suit (as distinct from any form of deferential review), § § 552a(g)(2)(A), (g)(3)(A), and mechanisms for exercising judicial equity jurisdiction (by in camera inspection, for example), § 552a(g)(3)(A).

The two remaining categories deal with derelictions having consequences beyond the statutory violations per se. Subsection (g)(1)(C) describes an agency's failure to maintain an adequate record on an individual, when the result is a determination "adverse" to that person. Subsection (g)(1)(D) speaks of a violation when someone suffers an "adverse effect" from any other failure to hew to the terms of the Act. Like the inspection and correction infractions, breaches of the statute with adverse consequences are addressed by specific terms governing relief:

"In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of -

"(A) actual damages sustained by the individual as a result of the refusal or

failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

"(B) the costs of the action together with reasonable attorney fees as determined by the court." § 552a(g)(4).[1]"  (emphasis added)

<u>Miklautsch v Gibbs</u>, 90-2 USTC ¶ 50,587 at 86,026 - 86,027; **Damages under 26 U.S.C. § 7433;** "Plaintiff's claim for damages under **26 U.S.C. § 7433** presents an entirely different matter.  Section 7433(a) provides:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service **recklessly or intentionally disregards any provision of this title,** or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

Section 7433(a) limits any recovery under this section to $100,000.

This section was added to the tax code in 1988 as a part of the **"Taxpayers' Bill of Rights"** because, as Congress saw it, "taxpayers did not have a specific right to bring an action against the Government for damages sustained due to unreasonable actions taken by an IRS employee." [H.R. Conf. Rep No. 1104, 100th Cong., 3d Sess. 228.]

The IRS here contends that because section 7433 authorizes suits only for wrongful conduct in connection with the "collection" of a tax, section 7433 is inapplicable where the IRS employs procedurally correct collection methods to collect on a tax that was wrongfully assessed. **[The use of the term "wrongful" in this context is intended to mean wrongful under section 7433, that is, an assessment that was made in intentional or reckless disregard of the tax code.]** This interpretation would clearly thwart Congress's intent in passing section 7433.  Under the IRS's view, the IRS could arbitrarily--and without any justification whatsoever--assess a tax, and then collect on that tax with impunity so long as procedurally proper methods were employed.  **It was the intent of Congress to protect taxpayers, not to allow the IRS to wrongfully bring a person to financial ruin so long as its collection methods were procedurally correct.**

The IRS's argument is also contrary to the plain meaning of section 7433.  The statute is not limited only to acts in disregard of proper collection procedures. Rather, the statute refers to any act in disregard of any provision in the tax code, which is connected with the eventual "collection" of a tax.

**Under a proper interpretation of section 7433, where a tax has been wrongfully assessed, and the IRS goes ahead and enforces collection on that tax, an action shall lie.**  It is true Congress chose not to extend section 7433 to damages arising from the wrongful determination of a tax alone.  Yet, all this means is that where a tax is wrongfully assessed but the taxpayer voluntarily remits payment, there is no action for damages because there has been no enforced collection.  The distinction between enforced collection and voluntary payment is sensible in that a taxpayer who has voluntarily paid is not likely to suffer the sever damage that occurs when the IRS brings its full collection powers to bear. Moreover, a taxpayer who voluntarily makes payments usually does so in cash which can easily be recouped by way of a refund.  **When the IRS collects an outstanding tax, it does so by seizures and levies on property, creating losses that (as this case demonstrates) cannot be recovered in an ordinary refund action.**

This interpretation is further bolstered by Congress's clear intent to limit the Government's potential liability in cases such as this.  As stated above, section 7433(b) limits a plaintiff's potential recovery to $100,000.  Moreover, section 7433(a) states that it and section 7432 shall be the exclusive remedy for "such actions." **Under the IRS's interpretation, however, a capricious and arbitrary assessment would not be within "such actions", thereby opening the door to whatever causes of action creative lawyers could conjure up.**  In this case alone, plaintiffs have asserted causes of action under RICO, Bivens, and the Federal Tort Claims Act.  Under any one of these theories, the damages could well exceed $100,000. Under this view, the Government becomes exposed to potential liability far in excess of $100,000.  Such is a result Congress  sought to avoid.  **Therefore, a cause of action does exist under Section 7433 where there has been a wrongful assessment upon which the IRS made collections.** [The court is not unmindful that this result may seem inconsistent with an earlier position stated herein.  On page 11 of this order, it was stated that if the term "payment" were to include the fair market value of properties levied and sold by the IRS, any return of the amount received would always be followed by a refund suit.  The same might be argued here.  However, in a refund suit there is no requirement that the IRS agents be shown to have acted intentionally or recklessly.  All that is required in a refund suit is that an overpayment was made for which the taxpayer has received no credit. Under the court's interpretation of section 7433, the code can be read consistently. If no intentional or reckless conduct exists, then the taxpayer is only entitled to a refund as discussed above.  **Where the taxpayer has been wronged by intentional or reckless conduct on the part of the IRS, then the code allows for damages.**] The next question is whether or not plaintiffs have made out such an action.

It appears from the evidence presented to the court that there exists a triable issue as to whether IRS agents intentionally or recklessly disregarded the tax code in wrongfully assessing and then collecting taxes from plaintiffs.  The IRS admits that it disallowed losses from the 1975 transactions, but went ahead and recognized gains from those same transactions in subsequent years.  Worse, the tax court in Glass held that no gain or loss should be recognized from those transactions. Plaintiffs accepted this finding by not appealing.  Yet a litany of IRS employees chose to ignore this holding and assessments were made on those gains.  **At one point an IRS official, Arthur Wadekamper, at least saw the light and apparently attempted to inform the collecting agent of the problem.  Despite this, Agent Broda went ahead and further collected on the invalid assessments.**

The IRS's only defense is that it was attempting to "protect itself" from an appeal that plaintiffs were not even part of.  The IRS has also asserted at various times that it was protecting itself from inconsistent positions taken by plaintiffs.  The court is not aware of any code provision or regulation that allows the IRS simply to ignore a tax court's holding in order to "protect itself".  Moreover, the court cannot find any inconsistency in plaintiffs' position.

**Plaintiffs' claims under 26 U.S.C. § 7433 are not subject to dismissal or summary judgment in defendant's favor."**  (emphasis added)

Hoogerheide v. Internal Revenue Service, (6th Cir. 2011) 637 F.3d 634; **In the aftermath of Arbaugh, it no longer is appropriate to treat the exhaustion requirements for bringing a § 7433 claim as jurisdictional. Mandatory though the exhaustion requirement in § 7433(d) may be, it is not jurisdictional.**

Three interlocking statutes and regulations define the terms and conditions for

bringing this type of lawsuit.

**One,** § 7433(a) permits a taxpayer to bring "a civil action for damages against the United States" if "any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence" violates a provision of the Internal Revenue Code. 26 U.S.C. § 7433(a).

**Two,** § 7433(d) provides that **"[a] judgment for damages shall not be awarded ... unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff."** Id. § 7433(d).

**Three,** a Treasury Regulation provides one of the administrative remedies that must 637*637 be exhausted: "An administrative claim... shall be sent in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides." 26 C.F.R. § 301.7433-1(e)(1). **The regulation adds that this administrative claim must include "[t]he dollar amount of the claim,"** id. § 301.7433-1(e)(2)(iv), **"[a] description of the injuries incurred by the taxpayer filing the claim,"** id. § 301.7433-1(e)(2)(iii), **and "[t]he name, current address, current home and work telephone numbers and any convenient times to be contacted ... of the taxpayer making the claim,"** id. § 301.7433-1(e)(2)(i).

**Arbaug's "readily administrable bright[-]line" rule places this exhaustion requirement on the nonjurisdictional side of the line. The requirement "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts."** Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). **It provides a limitation on an "award" of a "judgment for damages," 26 U.S.C. § 7433(d), not on the federal courts' jurisdiction.** "Under Arbaugh, we look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional,'" and "[t]he terms of [§ 7433(d)] do not suggest, much less provide clear evidence, that the provision was meant to carry jurisdictional consequences." Henderson v. Shinseki, ___ U.S. ___, 131 S.Ct. 1197, 1204, 179 L.Ed.2d 159 (2011).

Section 7433(d) "establishes a condition"-exhaustion-"that plaintiffs ordinarily must satisfy before filing a[ ] ... claim and invoking the [statute's] remedial provisions." Reed Elsevier, Inc. v. Muchnick, ___ U.S. ___, 130 S.Ct. 1237, 1242, 176 L.Ed.2d 17 (2010). Construing a similar provision, Reed Elsevier held that the Copyright Act's registration requirement was nonjurisdictional. Under the Copyright Act, "[t]he legal ... owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for ... infringement." 17 U.S.C. § 501(b). Section 411 of that Act says that "no civil action for infringement ... shall be instituted until preregistration or registration ... has been made." The Court reasoned that it had "treated as nonjurisdictional other types of threshold requirements that claimants must complete, or exhaust, before filing a lawsuit." 130 S.Ct. at 1246-47.

**The Court has not wavered from this rule. Each time it has construed a statutory requirement that a plaintiff proceed in another forum or seek redress in other ways before coming to federal court, it has construed the requirement as nonjurisdictional.** See Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs, ___ U.S. ___, 130 S.Ct. 584, 175 L.Ed.2d 428 (2009) (requirement to conference before seeking arbitration); Reed Elsevier, Inc., 130 S.Ct. at 1248 (requirement to register copyright); Zipes, 455 U.S. at 393, 102 S.Ct. 1127 (requirement to file charge with

EEOC before filing in court).

**It makes no difference that § 7433(d) requires a court to "determine[ ] that the plaintiff has exhausted" available administrative remedies. What is mandatory is not necessarily jurisdictional. The requirement simply imposes a precondition on an award of damages, akin to other nonjurisdictional preconditions on a plaintiff's right to relief.**

Consider Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), which dealt with a similar exhaustion requirement under the PLRA. "No action," the law said, "shall be brought with respect to prison conditions ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question," the Court acknowledged, 638*638 "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones, 549 U.S. at 211, 127 S.Ct. 910. Yet the parties in Jones agreed that exhaustion is "typically regard[ed] ... as an affirmative defense," and the Court acknowledged that "[w]e have referred to exhaustion in these terms." Id. at 212, 127 S.Ct. 910. The PLRA's "silen[ce] on the issue whether exhaustion" was an affirmative defense or an element of a plaintiff's claim, the Court reasoned, was "strong evidence that the usual practice should be followed," id., that the exhaustion requirement should be- and indeed was-treated as an affirmative defense. The same is true here in two respects. An exhaustion requirement generally will be treated as an affirmative defense, see Kim v. United States, 632 F.3d 713 (D.C.Cir. 2011) (treating § 7433(d) as an affirmative defense), and accordingly as a nonjurisdictional one, see Reed Elsevier, Inc., 130 S.Ct. at 1246-47 & n. 6; Allen v. Siebert, 552 U.S. 3, 6-7, 128 S.Ct. 2, 169 L.Ed.2d 329 (2007) (per curiam). **And just as silence in the PLRA about whether exhaustion is an element of a plaintiff's claim required courts to construe it as an affirmative defense, silence on whether § 7433(d) is a jurisdictional requirement requires us to treat it as nonjurisdictional.**

Context also shows that this "limitation" goes to a plaintiff's right to relief, not to his right to enter the federal courts. Another provision of the Internal Revenue Code, indeed one in the same subsection of the statute, shows how an exhaustion requirement might establish a jurisdictional requirement. Section 7422(a) provides that "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax ... until a claim... has been duly filed with the Secretary." Id. (emphasis added). Congress enacted § 7433(d), Pub.L. No. 100-647, Title VI, § 6240(a), 102 Stat. 3342, 3747 (1988), and recodified § 7433(d)'s exhaustion requirement, Pub.L. No. 105-206, Title III, § 3102(a)(2), 112 Stat. 685, 730 (1998), against this backdrop, and nonetheless it opted not to cast this requirement in jurisdictional terms. Different words have different meanings. **Prohibiting a "judgment for damages" is not the same as forbidding any "suit or proceeding" from being "maintained in any court." The latter is jurisdictional; the former is not.** See United States v. Dalm, 494 U.S. 596, 606, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); cf. 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies."). Congress even used the word "jurisdiction" elsewhere in the same subtitle and conditioned district courts' authority on certain events. 26 U.S.C. § § 7422(e) ("If the taxpayer files a petition with the Tax Court, the district court or the United States Court of Federal Claims, as the case may be, shall lose jurisdiction."), 7426(b) ("The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances."). It conspicuously omitted from § 7433(d),

however, similarly clear language that would have tied a district court's authority over a claim to a plaintiff's exhaustion of administrative remedies. See Henderson, 131 S.Ct. at 1205.

The United States responds that § 7433(d) is a term and condition of the United States' consent to suit and that the government's consent "define[s] th[e] court's jurisdiction to entertain the suit." FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). **The United States consented to be sued, however, in § 7433(a), and § 7433(d)'s exhaustion requirement is not an express term or condition of that consent. Not every statutory limitation on a plaintiff's right to relief becomes jurisdictional in a suit against the United States.** See Henderson, 131 S.Ct. at 1206.

**639\*639 That the district court should not have dismissed this case for lack of jurisdiction does not end the matter. It is quite possible that "nothing in the analysis... below turned on the mistake [and] a remand would only require a new ... label for the same ... conclusion."** Morrison v. Nat'l Austl. Bank Ltd., \_\_\_ U.S. \_\_\_, 130 S.Ct. 2869, 2877, 177 L.Ed.2d 535 (2010). This is just such a case.

Hoogerheide did not exhaust his administrative remedies, and the United States timely raised failure to exhaust as a defense in a motion to dismiss. For that reason his claim must be dismissed. The relevant letters, all attached to his complaint and incorporated by it, show that he failed to comply with the relevant exhaustion requirements. None of the letters from Hoogerheide or Hoogerheide's counsel are addressed to "the Area Director, Attn: Compliance Technical Support Manager of the area in which" Hoogerheide "resides." 26 C.F.R. § 301.7433-1(e)(1). None of the letters "include[s] ... [t]he dollar amount of the claim." Id. § 301.7433-1(e)(2)(iv). **And none of the letters mentions a claim for damages against the IRS.**

Hoogerheide claims that he substantially complied with the exhaustion requirement. But the existence of such an exception seems doubtful in view of the specificity of the Treasury regulations and the failure of Hoogerheide to identify any authority for one in this setting. Even if such an exception exists, **however, it is hard to see how it would benefit Hoogerheide, given his failure to reference a claim for damages or otherwise come close to complying with the applicable regulations in his letters.**  (emphasis added)

**6.** In support of the above case law in regard to the reported legal foundation, this petitioner has reviewed the District Court transcript of the hearing (hereinafter CT) before the Honorable Keith P. Ellison, United States District Judge, held on October 25, 2013. Petitioner offers these facts of the case file in review.

**7.** Petitioner observes that each of his Motions, Responses, and appearance in the courtroom were offered under penalty of perjury - 28 USC 1746(1) - as wholly truthful, complete, correct, and in no way misleading.  Respondent was given every opportunity to

counter the assertions made by Petitioner and failed to dispute any of the facts offered. Under the doctrine of silence implies consent, each of Petitioner's factual assertions are therefore taken as true for the purposes of this case.


**8.**     The Court shows confusion [CT P2/LL14-15] regarding placement of this case on the civil docket instead of the miscellaneous docket. Petitioner truthfully asserts [TH P3/LL7-8] that this is "not a tax case.  This is actually a due process case."  Respondent offered no evidence or challenge but returned to the Motion to Dismiss [CT P3/LL22-23] "on basic grounds that petitioner lacks standing to bring a petition to quash."


**9.**     The Court correctly understood [CT P4/LL1-2] the first-party nature of the "subpoena that's been served has been served on this woman to get her records, correct?" (Emphasis added)  The Court observed [CT P4/LL13-15] "I thought you were saying you were asking for her records.  That's not what you are saying?"  Respondent noted [CT P4/LL17-18] "regardless of whose records we're requesting ..."


**10.**     The Court kindly placed this Petitioner under oath [CT P5/LL15-18].  Petitioner correctly advised the Court that the "summons ... is issued on a Form 2039 ... which is a first-party summons" [CT P5/LL21-22] "yet, it is issued to a third-party" [CT P5/LL22-24] as evidenced by "the final page is a notice to third-party recipient" [CT P5/L25-P6/L1] and "in that situation I am entitled to notice, and I am entitled to petition the Court" [CT P6/LL17-18].  The Court validated the confusion and error [CT P6/LL20-21]: "I'm not sure I'm following you.  First-person notice to a third-party."


**11.**     This Petitioner read from an IRS catalog that Form 2039(c) [CT P7/LL1-2] is an "Order for a taxpayer to appear before the IRS," while Form 6637 [CT P7/LL10-12] is "used

to summon a third-party to appear before the IRS and to bring all specified documents and records."

12.    Respondent claimed [CT P7/LL18-19] that "I don't see the forms in this case bearing the form numbers that he's talking about."  [The instant Summons, a Form 2039, was entered as Petitioner's Exhibit A in the original Petition to Quash filed with this Court on June 24, 2013.]

13.    Respondent questioned the year of publication of IRS Catalog Document 7130 from which Petitioner was reading [CT P8/L3], which this Court noted [CT P8/L6] is "20 years old."  Petitioner asserted [CT P8/LL7-8] "I believe it's the same thing today, sir."  This Court, lacking a proffer of evidence from Respondent, countered [CT P8/L10] "I doubt that" and Respondent agreed [CT P8/LL11-12] without any controverting documentation, "if he's referring to it's obsolete, I wouldn't have any idea what he's referencing."

Petitioner objected [CT P8/L13] to testimony by Respondent's counsel and to lack of any controverting evidence, in order to preserve the points for appeal.  This Court assured parties [CT P8/LL14-15] that "When I'm sitting without a jury, I don't think we need objections."

14.    This Court then questioned Petitioner [CT P8/LL19-21] "How is it that you're able to sue the federal government when they haven't waived sovereign immunity?"  Respondent stood silent.  Petitioner replied [CT P8/LL22-25] "the issue of the suit is effectively denial of due process ... the tax summons is merely the nexus to the court."

15.    Petitioner offered for consideration [CT P9/L6-13] 26 USC Section 7433, citing from

section (A) that "with respect to a taxpayer any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title or any regulation promulgated ... such taxpayer may bring a civil action for damages against the United States in the District Court of the United States." (Emphases added)  Respondent challenged [CT P9/LL21-22; CT P9/L25-P10/L1] that "he didn't bring a 7433 suit ... and this case is specifically excluded by two different portions of the statute."

16.     Petitioner responded [CT P10/L6-7] "we raised the federal question, [Title] 28, [Section] 1331."  And further, regarding Title 5, Section 706 [CT P10/LL14-17]:  "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of terms of an agency action." Quotation of later subparagraphs and paragraphs [CT P10/L19-P11/L15] delineate clearly the exact issues of abuse and denial of due process extant in Petitioner's case. The Court offered [CT P11/L23] "I don't have the authority to [abrogate sovereign immunity]."

17.     Petitioner offered [CT P12/LL5-6] that the "substantial question that we're raising is the falsification of records."  [NB: An agency cannot hide its unlawful actions behind a cloak of sovereign immunity, otherwise that would be sovereign impunity.]

18.     The Court assured Petitioner [CT P12/LL7-8] that "there will [be] a forum when you can argue that, but I just don't think that's here."  Petitioner explained [CT P13/LL2-7] that he had asked for assistance and hearing "from virtually everyone all the way up to and including the commissioners, the Treasury Inspector General, the [sic:  should read "for"] Tax Administration and Secretary of the Treasury, and I am uniformly ignored. And I don't know which form [sic: should read "forum"] I would use. The Court offered no clarification.

19.     Petitioner offered support from the Administrative Procedures Act [CT P13/LL16-21], questioning the "agency's administrative procedures because they have been an egregious pattern of continuous denial of due process, procedural and substantive. An I know of no other forum besides federal court to restrain the agency from moving forward based upon falsification and fraudulent attempts." NB: The Court might have been guiding toward the Court of International Trade but made no specific mention.]

20.     Petitioner offered for review the Darby case, 509 U.S. 137, where the Court held [CT P14/LL5-10]: "The federal courts do not have the authority to require a plaintiff to exhausts [sic] available administrative remedies before seeking judicial review under the APA, where neither the relevant statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review." Further, in Goldberg v. Kelly, 397 U.S. 254 [CT P14/LL21-22]: "The fundamental requisite of due process of law is the opportunity to be heard." And further, in Grannis v. Ordean, 234 U.S. 385 [CT P14/LL24-25]: "the hearing must be, 'at a meaningful time and in a meaningful manner.'"

21.     The Court offered a sympathetic ear [CT P15/LL7-10]: "Sir, if your argument is that the government's been insufficiently responsive, I certainly can sympathize, but that does not give me a jurisdictional nexus."

22.     Petitioner offered for review the case of Matthews v. Eldridge, 424 U.S. 319 [CT P15/L24-P16/L9]: "Thus ... denying Eldridge's substantive claim 'for other reasons,' or upholding it 'under other provisions' at the post-termination stage, would not answer his constitutional challenge. Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberties' or 'property' interests within the meaning of the due process clause of the 5th or 14th Amendment. This Court has consistently has

held that some form of hearing is required before an individual is finally deprived of a property interest."

23.     Petitioner cited further from the Matthews case [CT P17/LL16-22]: "An additional factor to be considered here is the fairness and reliability of the existing pretermination procedures, and the probable value, if any of additional procedural safeguards." Petitioner requested [CT P18/LL1-2] "substantial justice and fundamental fairness in the due process provisions.  Each one of which has been steadfastly ignored by the agency, including my repeated requests for correction of errors in the individual master file, the AMDISA file and others ... that are used to establish assessment and a tax liability in their eyes.  And if those contain errors that are not ... corrected, it is a flagrant violation of the Administrative Procedures Act and the rights due to me as a private citizen."  Respondent offered no dispute regarding erroneous entries and the agency's failure to correct them.

24.     Respondent continue to claim [CT P18/L19] that "bringing this suit ... he lacks standing."  Has Respondent's counsel repeatedly testified to this Court, since she has provided no documentation or sworn affidavits or declarations in her Motions?  Respondent instructed this Court [CT P18/LL22-23]:  "if the issue is due process, due process is achieved through a summons hearing."  Petitioner remains confused as to just how due process is afforded to this Petitioner through means of a summons that was issued to a third-party?

25.     Respondent presented no evidence to this Court - either in her Motions or her own unsworn testimony and instruction, as cited - and simply insisted [CT P19/LL7-10] "we ask the Court grant our motion to dismiss today so that we can proceed with the collection of the liabilities ..."  Respondent presented no evidence to the Court to substantiate any tax

liabilities other than the prima facie and the rebuttable Form 2039 Summons, provided as Petitioner's Exhibit A.

26.     Petitioner asserted [CT P19/LL21-24] that "I have never had a position statement from the agency regarding what my liability derives from, in terms of the statute and the particular regulations for the particular taxes." And more ominously [CT P19/L25-P20/L9]: "Your Honor, the Supreme Court has ruled that a summons must be used for a legitimate purpose.  If the agency has falsified its records for which I have substantial evidence ... then going forth at this time is clearly to their advantage ... because they refuse to follow the Administrative Procedures Act, and they refuse to grant any due process [substantive or procedural], any."   Respondent's counsel offered no objection, nor controverting evidence that the petitioner's agency's tax records have not been falsified.

27.     Petitioner pleaded [CT P20/LL11-13] that the agency is "asking me to simply push a string across the table in a straight line while all the ways they do it are pulling the string which makes it easy."  Regrettably, the Court recognized that the government has an advantage [CT P20/LL17-18], "But I can't fix that.  I really can't." [NB: If the agency won't and the federal court can't, then to what forum would this Court have me turn for correction of errors within the abridgment of due process?]

28.     The Court concluded [CT P22/LL5-7] "But I'm not at all optimistic you can get over either one of these obstacles, either the sovereign immunity argument or the lack of standing, but you may [submit something else]."

29.     **Therefore,** the Petitioner prays and motions the Court pursuant to 28 USC § 1331, and 5 USC § 552(a) along with § § 701 - 706, and 26 USC § 7433 to amend the

petitioner's/complaint as to correct and errors of law and facts.

30.    **Wherefore,** the Petitioner pray for an order or judgement under FRCvP Rule 52(a),

for a ruling that the Internal Revenue Service has lost jurisdiction to dismiss this instant

case, due to a denial of due process, lack of proper administrative procedures, and lack

of subject matter jurisdiction by the Internal Revenue Service, being that the Good faith and

Legitimate Purpose doctrine were not followed as required by the Supreme Court of the

United States, the Internal Revenue Code and Regulations, and the Internal Revenue

Manual.

31.    The statements as made by this Petitioner in this herein memorandum of law and as

to the actions taken by the Petitioner regarding the response and request documents as

sent to the IRS, and to all other Petitioner's stated facts, are made and affirmed under the

penalty of perjury, under the Laws of the United States of America, to the best of the

Petitioners knowledge, pursuant to Title 28 U.S.C. § 1746(1).

Respectfully submitted, to the District Court of the United States on this 5th day of
November, 2013.

Mr. John P. Trowbridge, petitioner pro per
9816 Memorial Blvd., Suite 205,
Humble, Texas 77338
Phone (281)-540-2329

## CERTIFICATE OF SERVICE

This is to certify that a copy of the forgoing **Petitioner's "Memorandum of Law and Facts"** was served on Respondents by *Registered* U.S. Mail the same as this herein original on November 5th, 2013 in a U.S. postage paid wrapper addressed as follows:

ASHLEY V. TARGAC
Special Assistant United States Attorney
S.D. Texas Federal Bar No. 1611111
8701 S. Gessner, Ste. 710
Houston, Texas    77074
Telephone: (281) 721-7374
Facsimile: (281) 721-7343

Dated: November 5th, 2013.

Mr. John P. Trowbridge, petitioner pro per
9816 Memorial Blvd., Suite 205,
Humble, Texas  77338
Phone (281)-540-2329